**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

JAMALL M. ESLAMI,

                Plaintiff,

v.

WARDEN WICKMAN, et. al.,

                Defendant.

3:17-cv-00042-MMD-CBC

**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE[1]**

Plaintiff Jamall M. Eslami ("Plaintiff") filed the instant civil rights lawsuit against Defendants Michael Fialkowski and Brian Henley. (Collectively referred to as "Defendants"). Currently pending before the Court is Defendants' motion for summary judgment. (ECF No. 38.) Plaintiff did not file an opposition and no reply was filed. Having thoroughly reviewed the record and motions, the Court recommends Defendants' motion for summary judgment be granted.

## I.   FACTUAL BACKGROUND

The events giving rise to this lawsuit arose while Plaintiff was incarcerated at the Warm Springs Correctional Center ("WSCC") in Carson City, Nevada. On August 4, 2015 at approximately 4:42 p.m., a fight broke out between two inmates in the culinary area of WSCC. (ECF No. 38-1). Defendant Fialkowski, who was assigned to the gun cage in the culinary area, yelled at the inmates to "stop fighting" and "to get on the ground or he would shoot." (*Id.* at 6-7). When the fighting inmates ignored his commands, Defendant Fialkowski

---

[1]   This Report and Recommendation is made to the Honorable Robert C. Jones, United States District Judge. This action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

fired 3 non-lethal rubber pellet shots from a shotgun at the inmates. (*Id.*) Defendant, who was a bystander in the culinary area during the fight, was struck by two of the rubber pellets in each of his calves from one of these shots. (*Id.* at 1; ECF No. 40 at 60).

Following the incident, Plaintiff was transported to the medical unit at approximately 5:45 p.m., and his injuries were evaluated approximately 15 minutes later. (ECF No. 40 at 1; 60). Plaintiff refused treatment for his wounds, stating that both of his "legs [were] fine." (ECF No. 40 at 9). No restrictions were placed on Plaintiff due to his wounds following the incident. (ECF No. 40 at 60). Plaintiff was simply advised to return to medical if he suffered any additional issues or pain as a result of the incident. (*Id.*)

II.   **PROCEDURAL HISTORY**

Following this incident, Plaintiff filed the instant lawsuit pursuant to 42 U.S.C. § 1983. In the complaint, Plaintiff sued multiple defendants based on the above events and the injuries he sustained. (ECF No. 1-1). In the complaint, Plaintiff alleged that, despite being in excoriating pain and bleeding excessively, his medical needs were ignored for several hours and that this delay caused long term problems with his legs such as, "spontaneous cramping, [and] throbbing to spasmodic pain. (*Id.* at 3).

On January 29, 2018, the court screened Plaintiff's complaint pursuant to 28 U.S.C. § 1915A and determined that Plaintiff stated two claims for relief. (ECF No. 8). In Count 1, the court determined that Plaintiff stated a cause of action against Defendants Fialkowski and Alexander[2] for violating Plaintiff's Eighth Amendment right due to their deliberate indifference to his serious medical needs. This claim was based on Plaintiff's claim that these defendants failed to provide him with medical assistance after he suffered his injuries and prevented him from receiving medical care for "hours" following the incident. (*Id.* at 4-5). In Count II, the court determined that Plaintiff likewise stated a second cause of action for a violation of his Eighth Amendment rights against Defendant Henley. In this cause of

---

[2]   The complaint specifically refers to defendant "Skeet," however, it is agreed that the person referred to in the complaint is actually Defendant Fialkowski. In addition, Defendant Alexander was dismissed from this lawsuit on October 16, 2018. (ECF No. 34). Therefore, Count I is proceeding against Defendant Fialkowski only.

action, Plaintiff alleged that following his injuries from the above incident, the physician at WSCC recommended that he temporarily use a lower bunk. Plaintiff claimed that Defendant Henley made it clear to him that there would be "repercussions" for his use of a lower bunk and that he was told a lower bunk was only available in administrative segregation "hole." Plaintiff alleged he felt "intimidated" by Defendant Henley's "veiled threats" and therefore he did not pursue a request for a bottom bunk which ultimately impeded the healing of his legs. (*Id.* 5-6).

On December 20, 2018, Defendants filed a motion for summary judgment seeking dismissal of this case. (ECF No. 38). Defendants argue Plaintiff's claims must be dismissed because: (1) there is no evidence that establishes either Defendant Fialkowski or Henley were deliberately indifferent to Plaintiff's medical needs; and, (2) they are each entitled to qualified immunity. (ECF No. 38 at 9-14).

Upon the filing of the motion for summary judgment, the court entered a minute order advising Plaintiff of his obligations to file an opposition or responsive document to the motion pursuant to *Klingele v. Eikenberry* and *Rand v. Rowland*. (ECF No. 42). However, Plaintiff did not file a response or opposition to the motion. Thereafter, the court entered an order providing Plaintiff an extension of time to file an opposition or response up to and including Friday, February 1, 2019. (ECF No. 43). Plaintiff again failed to file any opposition or responsive document.

### III.     SUMMARY JUDGMENT STANDARD

Summary judgment allows the court to avoid unnecessary trials. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). The court properly grants summary judgment when the record demonstrates that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). "[T]he substantive law will identify which facts are material.  Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby*, 477 U.S.

242, 248 (1986). A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Id.* Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996). At this stage, the court's role is to verify that reasonable minds could differ when interpreting the record; the court does not weigh the evidence or determine its truth. *Schmidt v. Contra Costa Cnty.*, 693 F.3d 1122, 1132 (9th Cir. 2012); *Nw. Motorcycle Ass'n*, 18 F.3d at 1472.

Summary judgment proceeds in burden-shifting steps. A moving party who does not bear the burden of proof at trial "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element" to support its case. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Ultimately, the moving party must demonstrate, on the basis of authenticated evidence, that the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party as to disputed material facts. *Celotex*, 477 U.S. at 323; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014).

Where the moving party meets its burden, the burden shifts to the nonmoving party to "designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted). "This burden is not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence. . . . In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* (citations omitted). The nonmoving party may defeat the summary judgment motion only by setting forth specific facts that illustrate a genuine dispute requiring a factfinder's

resolution. *Liberty Lobby*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324. Although the nonmoving party need not produce authenticated evidence, Fed. R. Civ. P. 56(c), mere assertions, pleading allegations, and "metaphysical doubt as to the material facts" will not defeat a properly-supported and meritorious summary judgment motion, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

For purposes of opposing summary judgment, the contentions offered by a *pro se* litigant in motions and pleadings are admissible to the extent that the contents are based on personal knowledge and set forth facts that would be admissible into evidence and the litigant attested under penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

**III.   Analysis**

In Counts I and II, Plaintiff alleges Defendants Fialkowski and Henley violated his Eighth Amendment rights due to their deliberate indifference to his serious medical needs. However, based on the undisputed evidence, there are no genuine issues of material fact as to either count and summary judgment should be granted.

A.    <u>Eighth Amendment Deliberate Indifference to a Serious Medical Need</u>

A prisoner's claim of inadequate medical care arises under the Eighth Amendment. *See Whitley v. Albers*, 475 U.S. 312, 319 (1986). The Eighth Amendment prohibits the imposition of cruel and unusual punishment and "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). To prevail in an action alleging cruel and unusual punishment, a plaintiff's case must satisfy an objective standard—that the deprivation was serious enough to amount to cruel and unusual punishment; and a subjective standard—deliberate indifference. *Farmer*

*v. Brennan*, 511 U.S. 825, 834 (1994); *see also Wilson v. Seiter*, 501 U.S. 294, 297-304 (1991). A prison official violates the Eighth Amendment when he responds with deliberate indifference to an inmate's serious medical needs. *Farmer*, 511 U.S. at 834.

The objective requirement of a "serious medical need" is met if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing *Estelle*, 429 U.S. at 104). In this circuit, examples of serious medical needs include "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (citations omitted).

The subjective standard of deliberate indifference requires "more than ordinary lack of due care for the prisoner's interests or safety." *Farmer*, 511 U.S. at 835 (quoting *Whitley*, 475 U.S. at 319). The requisite state of mind lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other." *Id.* at 836. To prove deliberate indifference, a plaintiff must demonstrate that prison staff denied, delayed, or intentionally interfered with medical treatment, or that the manner in which prison staff provided medical care indicated deliberate indifference; and that plaintiff sustained damages as a result of such conduct. *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988).

Prison officials have wide discretion when determining the nature and extent of medical treatment to provide to inmates in their care. *See Jones v. Johnson*, 781 F.2d 769, 771 (9th Cir. 1986). Prison medical staff do not violate the Eighth Amendment simply

because their opinion concerning medical treatment conflicts with the opinion of the inmate-patient. *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981).

After a careful review of the undisputed evidence presented in this case, it is plain that neither Counts I or II can survive summary judgment. First, each claim fails under the "objective" standard required for an Eighth Amendment claim. It is undisputed that Plaintiff was injured by two pellets hitting each of his calves after non-lethal pellet rounds were fired to break up the fight at WSCC on August 4, 2015. However, the evidence is also undisputed that, contrary to Plaintiff's complaint, his injuries did not result in significant injuries and there is no evidence that his injuries were not attended to in a timely manner.

Specifically, Plaintiff received two wounds – one on each of his calves - where he was hit by the shrapnel of two rubber pellets. The injury occurred at approximately 4:42 p.m., and Plaintiff was taken to medical and evaluated by no later than 6:00 p.m. that same day. (ECF No. 40 at 60). At the time of his evaluation, the injuries noted were merely described as a wound to each of his calves and no restrictions were placed on Plaintiff of any kind. (*Id.*) There was no indication that the injuries were of any significant nature or that they caused any extensively injury or damage to Plaintiff. To the contrary, when asked about his injuries, Plaintiff stated he "[thought the pellets] got [his] leg." (*Id.*) Thereafter, Plaintiff *expressly refused* medical attention, stating that his legs were "*fine.*" (ECF No. 40 at 9) (emphasis added). There are no further notes or medical records indicating that Plaintiff's wounds were excessively substantial, that he ever sought any additional medical treatment related to these wounds, or that Plaintiff ever complained about his injuries again.

However, even assuming *arguendo* the objective standard can be met based on his injuries alone, Plaintiff's claims also fail under the "subjective standard." As noted above,

to prove deliberate indifference under the subjective standard, a plaintiff must demonstrate that prison staff "denied, delayed, or intentionally interfered with medical treatment, or that the manner in which prison staff provided medical care indicated deliberate indifference; and that plaintiff sustained damages as a result of such conduct." *Hutchinson*, 838 F.2d at 394. As previously noted, there is no evidence that either defendant denied Plaintiff medical care or that either defendant was responsible for any delay or intentional interference with any medical care in this case. Rather, the evidence is undisputed that Plaintiff was taken for a medical evaluation within approximately one hour after his injuries were sustained. Plaintiff was evaluated at that time and he personally *refused* any additional treatment. (ECF No. 40 at 9). There is no evidence that Plaintiff was given any restrictions, such as using a lowered bunk, as a result of his injuries or that there was any deliberate indifference by any of the medical staff attending to his injuries of any kind. Finally, there is no evidence in the record that Plaintiff sustained any prolonged injury or pain due to the injuries he sustained or that he suffered any damages whatsoever as a result of any action, or inaction, by either defendant named in this case.

Based on the undisputed evidence, the court finds that there are no material issues of fact to be resolved as to either of Plaintiff's claims. Rather, the undisputed evidence establishes that both of Plaintiff's claims fail. Therefore, the court recommends that the court enter summary judgment on all claims in this case.

B.  Qualified Immunity

"[G]overnment officials performing discretionary functions [are entitled to] a qualified immunity, shielding them from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have

violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987) (citations omitted); *see also Wood v. Moss*, 572 U.S. 744, 757 (2014) ("The doctrine of qualified immunity protects government officials from liability for civil damages … ."); *Hernandez v. City of San Jose*, 897 F.3d 1125, 1132 (9th Cir. 2018). "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam) (quoting *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (per curiam)); *Foster v. City of Indio*, 908 F.3d 1204, 1210 (9th Cir. 2018) (per curiam); *Reese v. Cty. of Sacramento*, 888 F.3d 1030, 1037 (9th Cir. 2018). The reasonableness of the officer's conduct is "judged against the backdrop of the law at the time of the conduct." *Kisela*, 138 S. Ct. at 1152 (quotation marks and citation omitted).

The Supreme Court has set forth a two-part analysis for resolving government officials' qualified immunity claims. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001), overruled, in part, on other grounds by, *Pearson v. Callahan*, 555 U.S. 223 236 (2009). First, the court must consider whether the facts "[t]aken in the light most favorable to the party asserting the injury … show [that] the [defendant's] conduct violated a constitutional right[.]" *Saucier*, 533 U.S. at 201. "If there is no constitutional violation, the inquiry ends and the officer is entitled to qualified immunity." *Ioane*, 903 F.3d at 933. Second, the court must determine whether the right was clearly established at the time of the alleged violation. *Saucier*, 533 U.S. at 201; *Wood v. Moss*, 572 U.S. 744, 757 (2014).

Here, reviewing the evidence in the light most favorable to Plaintiff, the finds that Defendants Failkowski and Henley are entitled to qualified immunity because the evidence is undisputed that neither defendant violated Plaintiff's constitutional rights. As noted

above, the undisputed evidence presented with the motion for summary judgment reveals that neither Defendant Failkowski nor Henley violated Plaintiff's Eighth Amendment rights as there is no evidence that either defendant was deliberate indifferent to Plaintiff's medical needs. In sum, there is no evidence to create any issue of fact that Plaintiff's Eighth Amendment rights were violated in this case. Therefore, Defendant's motion for summary judgment should also be granted because Defendants are entitled to qualified immunity in this case.

### C.     Failure to Oppose

This court's local rules specifically state that, "the failure of an opposing party to file points and authorities in response to any motion, except a motion under Fed. R. Civ. P. 56 or a motion for -attorney's fees, constitutes a consent to the granting of the motion." LR 7-2(d).

After reviewing the documents on file and the docket in this case, the court finds Defendants' motion for summary judgment should also be granted due to Plaintiff's failure to file an opposition or other responsive document. Plaintiff was on notice of his obligation to file a responsive to document to Defendants' motion pursuant to the court's order advising him of his obligations pursuant to *Klingele v. Eikenberry* and *Rand v. Rowland*. (ECF No. 42). When Plaintiff filed to file any opposition, the court sua sponte provided Plaintiff an extension of time to file an opposition up to and including Friday, February 1, 2019. (ECF No. 43). Plaintiff again failed to file any opposition or responsive document. The court construes Plaintiff's repeated failures to file an opposition or responsive document to constitute his consent that Defendants' motion should be granted. LR 7-2(d).

## V. CONCLUSION

Based on the foregoing, the court recommends that Defendants' motion for summary judgment (ECF No. 38) be granted. The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## VI. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Defendants' motion for summary judgment (ECF No. 38) be **GRANTED**;

**IT IS FURTHER RECOMMENDED** that judgment be entered, and close the case.

**DATED:** May 28, 2019.

_____
**UNITED STATES MAGISTRATE JUDGE**